UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 23-176 |
| v. | * | SECTION: R |
| SHIRLEY HARRIS | * | |
| | * | |

\* \* \*

## FACTUAL BASIS

Should this matter have gone to trial, the Government would have proved through the introduction of reliable testimony and admissible tangible exhibits, including documentary evidence, the following to support the allegation charged by the Government in Count 1 of the Indictment against the defendant, **SHIRLEY HARRIS ("HARRIS")**, charging her with a violation of Title 18, United States Code, Section 371, namely, conspiracy to commit wire fraud. The Defendant, along with her co-conspirators and others, beginning at a time unknown and continuing through the present, in the Eastern District of Louisiana, and elsewhere, conspired to commit wire fraud in connection with a staged automobile accident that occurred on or about April 24, 2017.

At trial, the government would present evidence that Coconspirator D called **HARRIS** and asked her to serve as a passenger in a staged automobile collision on or about April 24, 2017, in order to obtain money through fraud. Coconspirator D explained that someone had backed out of the scheme and so **HARRIS** was needed to serve as a passenger. Coconspirator D directed **HARRIS** to go to her cousin's house on or about April 24, 2017. At trial, the Government would present telephone records showing that, between on or about April 23, 2017, and April 24, 2017, Coconspirator D exchanged numerous phone calls and text messages with **HARRIS**,

AUSA
Defendant
Defense Counsel

Clark, Coconspirator A, Coconspirator B, and Coconspirator C.

On or about April 24, 2017, **HARRIS**, Clark, Coconspirator A, Coconspirator B, Coconspirator C, and Coconspirator D met at **HARRIS's** cousin's house. Coconspirator A got into the driver's seat of Coconspirator B's 2016 Nissan Sentra ("Sentra"). Clark, **HARRIS**, Coconspirator B, and Coconspirator C served as passengers while Coconspirator A drove.

At approximately 7:30 P.M., Coconspirator A intentionally collided the Sentra with a 2007 Peterbilt tractor-trailer owned by God's Way Trucking that Truck Driver A was driving west on Interstate 10 near the Crowder Boulevard exit. Truck Driver A was unaware that a collision had occurred and continued driving.

At trial, the government would present phone records showing that, between approximately 7:37 P.M. and 7:48 P.M., Coconspirator D exchanged phone calls with Clark, **HARRIS**, Coconspirator A, Coconspirator B, and Coconspirator C. Coconspirator D requested updates on speakerphone. After the collision, Coconspirator A fled the scene and directed the passengers to tell NOPD that Coconspirator B had been driving. Coconspirator B got behind the wheel of the Sentra to make it appear that Coconspirator B was driving the vehicle at the time of the staged accident.

Coconspirator A and Coconspirator D instructed the passengers over the phone not to let the truck get away so that a claim could be made. Coconspirator B drove the Sentra to locate the tractor-trailer. The Government would introduce body camera footage showing that Clark and Coconspirator B falsely reported to the New Orleans Police Department ("NOPD") that the God's Way Trucking tractor-trailer had caused the collision and struck the Sentra.

2

AUSA _____
Defendant _____
Defense Counsel _____

The next day, Coconspirator A and Coconspirator D directed **HARRIS** to go to Attorney A's office. Clark and Coconspirator B also went to Attorney A's office to seek Attorney A's legal representation regarding the collision the day before.

God's Way Trucking and Truck Driver A were insured by Canal Insurance Company ("Canal"). If this case had proceeded to trial, the government would introduce records showing that, on or about September 27, 2017, Attorney A sent an email to a Canal representative regarding damages that **HARRIS**, Clark, Coconspirator B, and Coconspirator C purportedly suffered from the April 24, 2017 collision. At trial, the government would present evidence that, in the following months, Canal and Attorney A negotiated a settlement of $10,000.00 for Coconspirator C. The government would introduce bank records showing that, on or about November 28, 2017, Coconspirator C negotiated a $10,000.00 settlement check he/she received from Canal to resolve his/her fraudulent claims about the April 24, 2017 staged collision.

The government would also introduce documentary evidence showing that, in the months following the staged collision, **HARRIS** and Clark sought medical treatment to increase the value of their fraudulent claims. **HARRIS** was treated by a chiropractor, received injections, and underwent an MRI. In or around 2018, **HARRIS** had a spinal fusion surgery. After the surgery, **HARRIS** felt that her condition worsened.

At trial, the government would introduce court records showing that, on or about April 6, 2018, a Petition for Damages was filed against Canal, God's Way Trucking, and Truck Driver A on behalf of **HARRIS**, Clark, and Coconspirator B in the Civil District Court for the Parish of Orleans, State of Louisiana ("CDC") ("Clark Lawsuit"). The Clark Lawsuit sought monetary damages premised on falsehoods regarding the April 24, 2017 collision. Specifically, the Clark Lawsuit falsely alleged that Truck Driver A had caused the collision and that Coconspirator B

3

AUSA _____
Defendant _____
Defense Counsel _____

had been driving the Sentra at the time.  The government would introduce court records showing that, on or about April 27, 2018, the Clark Lawsuit was removed to the U.S. District Court for the Eastern District of Louisiana.

The government would also introduce documentary evidence that, on or about October 18, 2018, **HARRIS**, Clark and Coconspirator B provided false deposition testimony in connection with the Clark Lawsuit.  **HARRIS** falsely testified that Coconspirator B was driving the Sentra straight when a truck came over into their lane and struck the Sentra.

At trial, the government would introduce records showing that, on or about April 12, 2019, Attorney A electronically filed a Motion in Limine for Supplemental Responses to First Set of Request for Admissions for **HARRIS**, Clark, and Coconspirator B in furtherance of the Clark Lawsuit. This filing stated that the damages for **CLARK**, **HARRIS**, and Coconspirator B exceeded $75,000 each.   This pleading was filed through the USDC-EDLA's Case Management/Electronic Case Files ("CM/ECF") system, which caused the Motion in Limine to be electronically transmitted to Ashburn, Virginia, and then electronically transmitted to the Eastern District of Louisiana via electronic mail to counsel of record for Canal.   At trial, witnesses would testify that Canal's counsel of record worked for a law firm whose private email server was in Elmwood, Louisiana.

On or about May 29, 2019, the Clark Lawsuit was stayed due to a suspected criminal investigation.

On or about December 16, 2019, **HARRIS** was interviewed by agents with the Federal Bureau of Investigation ("FBI"). During the interview, **HARRIS** admitted that her accident was staged and that she had agreed to participate to make money.

In sum, the Government's evidence would prove that the defendant, **HARRIS**, conspired

4

AUSA
Defendant S H
Defense Counsel

to commit wire fraud by causing Attorney A to electronically file a Motion in Limine for Supplemental Responses to First Set of Request for Admissions in furtherance of fraudulent claims against Truck Driver A and Canal, which caused a wire from Ashburn, Virginia, to the Eastern District of Louisiana.

### Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by **HARRIS**, and/or the Government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for her guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the plea of guilty to the charged offense by **HARRIS**.

The above facts come from an investigation conducted by, and would be proven at trial by, credible testimony from, *inter alia*, Special Agents and forensic examiners from the Federal Bureau of Investigation and other witnesses and from admissible tangible exhibits in the custody of the FBI, including phone records, a police report, medical records, body camera footage, bank records, deposition transcripts, and civil filings.

READ AND APPROVED:

_____
SHIRLEY HARRIS
Defendant

_____ # 32274
MICHAEL KENNEDY
Counsel for Shirley Harris

_____
MARIA M. CARBONI
Assistant United States Attorney

5